UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANIEL ANDREWS, | Case No. 2:18-CV-1625 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| CITY OF HENDERSON, et al., | |
| Defendant(s). | |

Presently before the court is defendants Karl Lippisch and Phillip Watford's motion for summary judgment. (ECF No. 68). Plaintiff Daniel Andrews filed a response, (ECF No. 71), to which defendants Lippisch and Watford replied, (ECF No. 76).

Also before the court is defendant City of Henderson's motion for summary judgment (ECF No. 69). Plaintiff Daniel Andrews filed a response, (ECF No. 72), to which defendant City of Henderson replied, (ECF No. 77).

**I.     Facts**

This case arises from a physical altercation between plaintiff and police officers. (ECF No. 1). The parties do not dispute the following:

On January 3, 2017, detectives with the Henderson Police Department surveilled a woman suspected of involvement in a series of armed robberies. (ECF No. 68). During surveillance, she was picked up by plaintiff and the detectives followed the pair to the parking lot of the Henderson Justice Facility. (*Id.*). Plaintiff was leaving the Henderson Justice Facility when he was initially seized by Defendant Watford who tackled plaintiff and took him into custody. (*Id.*). Plaintiff suffered an acetabular fracture and required two surgeries. (ECF No. 71). Plaintiff was unarmed at the time of his arrest. (*Id.*). Plaintiff was later convicted of one count of conspiracy to commit robbery, one count of burglary while in possession of a deadly weapon, and two counts of robbery with the use of a deadly weapon. (ECF No. 68).

James C. Mahan
U.S. District Judge

After the arrest, Watford prepared a "use of force report," setting forth a narrative of these events. (*Id.*). The report was reviewed by Sergeant John Plunkett. (*Id.*). After Plunkett approved, the report was sent to Lieutenant Garrett Poinier. (*Id.*). Poinier reviewed the report and video of the arrest and determined the use of force was reasonable. (*Id.*). Poinier forwarded the report to Chief of Staff David Burns, who also viewed the video of the arrest, and determined that the arrest was aligned with current policy and did not warrant further training. (*Id.*).

These actions were taken in accordance with the Henderson Police Department's ("HPD") Policy DP 300 – Use of Force. (ECF No. 69). HPD's use of force policy is to instruct officers in the use of compliance techniques in accordance with constitutional law, Nevada Revised Statutes, and HPD-approved policy and training. (*Id.*). The City of Henderson trains its officers in the adopted use of force policy at least annually. (*Id.*). Both Watford and Lippisch were current in their use of force training as of January 3, 2017. (*Id.*).

Plaintiff initiated this suit on August 28, 2018. (ECF No. 1). Defendants Adams, Ebert, Henderson Police Department, LaPeer, and Lippisch filed a motion to dismiss on October 24, 2018. (ECF No. 17). A hearing was held on those motions on August 21, 2019. This court granted in part and denied in part the motion to dismiss, permitting the claims against Lippisch and Watford to proceed, dismissing without prejudice the claims against the City of Henderson, and dismissing with prejudice the remaining claims and the remaining Defendants. (ECF No. 48).

Plaintiff filed an amended complaint on August 28, 2019, asserting an excessive force claim pursuant to 42 U.S.C. §1983 against all defendants, excessive force against defendants Lippisch and Watford, municipal liability for unconstitutional custom, practice, and policy as well as for failure to train and ratification against the City of Henderson, and battery and negligence against all defendants. (ECF No. 49).

Defendants filed the instant motions for summary judgment on January 21, 2020. (ECF Nos. 68, 69).

## II.  Legal Standard

*A. Summary Judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a

**James C. Mahan**
**U.S. District Judge**

- 2 -

judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party need not establish a dispute of material fact conclusively in its favor.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Id.*

In other words, the non-moving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

James C. Mahan
U.S. District Judge

allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

B.  *Qualified Immunity*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014). In deciding whether officers are entitled to qualified immunity, courts consider, taking the facts in the light most favorable to the nonmoving party, whether (1) the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time. *Id.*

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." *Id.* at 1125 (internal quotation marks omitted). "This requires two separate determinations: (1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1052 (9th Cir. 2014). "A Government official's conduct violates clearly

James C. Mahan
U.S. District Judge

- 4 -

established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While a case directly on point is not required in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083. Further, the right must be defined at "the appropriate level of generality . . . [the court] must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000); *see also al-Kidd*, 131 S.Ct. at 2084. The plaintiff bears the burden of proving that the right was clearly established. *Tarabochia*, 766 F.3d at 1125.

In deciding a claim of qualified immunity where a genuine issue of material fact exists, the court accepts the version asserted by the non-moving party. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013). Summary judgment must be denied where a genuine issue of material fact exists that prevents a finding of qualified immunity. *Sandoval v. Las Vegas Metropolitan Police Dept.*, 756 F.3d 1154, 1160 (9th Cir. 2014).

### III. Discussion

#### A. Defendants Lippisch and Watford's Motion for Summary Judgment

Defendants Lippisch and Watford assert that plaintiff's excessive force claim fails as a matter of law, because Watford's use of force was reasonable. Defendants alsoassert that, because Lippisch did not participate in plaintiff's initial seizure but merely tripped over Watford's foot and unintentionally fell on top of Watford and plaintiff, plaintiff's excessive force claim against him fails. Plaintiff responds that the force was objectively unreasonable, because plaintiff was not attempting to flee or resist arrest at the time he was tackled.

To make out a prima facie case under § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. *See Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1989).

Whether an officer's use of force constitutes a violation of the Fourth Amendment turns upon whether the officer's conduct was reasonable under the circumstances. *Jones v. Las Vegas Metro. Police Dept.*, 873 F.3d 1123, 1130 (9th Cir. 2017). "Reasonableness" is determined in part by a consideration of the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

James C. Mahan
U.S. District Judge

- 5 -

or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The most important factor under *Graham* is whether the suspect posed an immediate threat to the safety of the officers or others." *Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (internal quotations and citations omitted). "These factors are non-exhaustive," and courts must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Id.* at 1006.

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham*, 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Taking the facts in the light most favorable to plaintiff, there is a genuine dispute of material fact as to whether the force deployed by both Watford and Lippisch was objectively reasonable, as evinced by an analysis under *Graham*. 490 U.S. at 396.

Plaintiff has adduced evidence in the form of video footage of the incident to dispute Lippisch's contention that he did not intentionally use force against plaintiff when he fell on top of Watford and plaintiff. Though he claims in his deposition testimony that he tripped and his momentum carried him forward on top of Watford, a rational trier of fact could conclude that the video footage belies this testimony. At this juncture, this court declines defendants' request to exclude the video footage. (ECF No. 77).

Turning to the *Graham* factors: First, it is undisputed that, at the time he was apprehended, plaintiff was not actively engaged in the commission of robbery with a deadly weapon. Defendants attempt to expand the "severity of the crime" factor to include consideration of the fact that plaintiff was taken into custody on suspicion of having committed several robberies with a deadly weapon at the moment of his arrest. However, this court finds that plaintiff was not engaged in the commission of a crime of any sort. Plaintiff simply walked out of the courthouse doors and was tackled shortly thereafter.

Second, it is disputed whether plaintiff posed an *immediate* threat to the safety of the officers and others at the time he was taken down. Although defendants assert that they thought plaintiff was armed, plaintiff proffers an incident report written by Detective Condratovich, indicating that the detectives knew he would not be armed after having gone through the

courthouse metal detectors. (ECF No. 73). Thus, dispute still exists as to whether the detectives suspected plaintiff of being armed when he exited the courthouse, after having gone through the courthouse metal detector. (*Id.*). Additionally, Detective Lapeer provided inconsistent testimony as to whether he saw plaintiff within the Henderson courthouse, giving rise to a dispute as to what Watford and Lippisch knew about any potential risk plaintiff posed when he was forcefully taken into custody.

Furthermore, even if defendants suspected plaintiff of being armed, defendants have not presented plausible evidence to suggest that tackling plaintiff was the only option available to them. Defendants make much of the fact that they assumed plaintiff was armed and that he was in a crowded public venue. It is entirely unclear why defendants would enhance the potential risk to the public and to themselves by tackling plaintiff as he exited the courthouse. They could have instead waiting until he had moved further away from the courthouse doors or apprehending him before he arrived there. *See Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1166 (9th Cir. 2011) (citing *Bryan v. MacPherson*, 630 F.3d 805, 831) (9th Cir.2010) ( "[T]he availability of other, less intrusive measures makes clear just how limited was the government's interest in the use of significant force.")).

Indeed, defendants provide no undisputed facts to suggest that tackling plaintiff was the only option available to them on the basis of their perception that plaintiff was armed. The video evidence contains no audio and therefore does not definitively indicate whether they first tried to apprehend plaintiff through other, less forceful means, particularly where Watford's own incident report indicates he observed Plaintiff walking with a slight limp. (ECF No. 73). Furthermore, it remains disputed whether plaintiff could be observed pointing his firearm at people while in commission of the previous robberies for which he was apprehended, which was one of the alleged bases for the use of force. (*See* ECF No. 73).

Finally, it is evident that plaintiff was not actively resisting arrest or attempting to evade arrest by flight at the time he was apprehended, which completely belies one of Watford's assertions in his use of force report that his reason for "lung[ing]" at plaintiff was because he was fleeing. (*Id.*) Upon viewing the video surveillance, Detective Lapeer testified in his deposition that plaintiff was not fleeing at the time he was seized. He also testified that plaintiff was not resisting arrest. (*Id.).* Detective Condratovich also concluded plaintiff was not fleeing or

resisting arrest. Sergeant Plunkett testified in his deposition that plaintiff was not fleeing at the time of his arrest. (ECF No. 76).

When considered in a light most favorable to non-movant, the disputed facts demonstrate that a constitutional violation occurred. As non-movant, plaintiff has met his burden of setting forth disputed facts that, if proven true, would establish a constitutional violation.

*1. Qualified Immunity*

Defendants also assert qualified immunity, because they did not violate plaintiff's Fourth Amendment rights, and even if they did, the contours of those rights were not clearly established at the time of the incident. The court has already concluded that a genuine dispute of material fact exists as to whether defendants violated plaintiff's Fourth Amendment rights by utilizing excessive force. Thus, plaintiff has met the first prong of qualified immunity by demonstrating that defendants' conduct as described violated a constitutional right.

As for the second prong of qualified immunity, the court finds that defendants violated a clearly established right. "Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). However, this circuit has clearly established that a "gang tackle" where, *inter alia*, the severity of the alleged crime is minimal, the necessity of "split-second police judgments in 'tense, uncertain, or rapidly evolving' situations [is] not warranted," *id.* at 478, and lesser means of force were not employed nor resisted by the suspect before he was gang-tackled, constitutes an unreasonable use of force, *see id.* at 479. Accordingly, "[t]he principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was thus well-established in 2001, years before the events at issue in this case." *Young*, 655 F.3d at 1168 (citing *Blankenhorn*, 485 F.3d at 481).

The Ninth Circuit in *Blankenhorn* relied on *Graham* itself as clearly established law putting the officers who gang-tackled the plaintiff in that case on notice that "force is only justified when there is a need for force," *id.,* and consequently:

> [T]his clear principle would have put a prudent officer on notice that gang-tackling without first attempting a less violent means of arresting a relatively calm trespass

>suspect—especially one who had been cooperative in the past and was at the moment not actively resisting arrest—was a violation of that person's Fourth Amendment rights.

*Id.*

Here, defendants knew plaintiff was unarmed, plaintiff was not resisting arrest or attempting to flee at the time he was apprehended, and indeed appeared to be entirely unaware he was in the presence of law enforcement officers as defendants were undercover, and was not in the commission of any crime at the time of his apprehension. Thus, there was simply no clear need for force, and in light of clearly established law forbidding force where none is called for, defendants were on notice that tackling plaintiff with no warning and without first attempting a less violent means of arrest would constitute excessive force.

The court therefore denies qualified immunity, and as such, denies summary judgment in favor of Defendants Watford and Lippisch on plaintiff's excessive force claim.

2. *Statutory Immunity*

While defendants subsequently moved for summary judgment on the merits of plaintiff's state law claims in their reply, (ECF No. 77), the court does not consider these arguments on the merits, as plaintiff was given no opportunity to oppose them. Defendants did also assert statutory discretionary immunity as to plaintiff's battery and negligence claims pursuant to NRS 41.032.

NRS 41.032 provides: "Except as provided in NRS 278.0233 no action may be brought under NRS 41.031 or against an immune contractor or an officer or employee of the State or any of its agencies or political subdivisions which is . . . . Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused." NRS 41.032. The Nevada Supreme Court has held that "[p]ersonal deliberation, decision and judgment are requirements of a discretionary act. . . . Such a decision should not be second guessed by a court with the benefit of hindsight." *Parker v. Mineral Cty.*, 729 P.2d 491, 493 (Nev. 1986) (citations omitted).

To determine whether an action of a state officer falls within the scope of NRS Section 41.032(2), a court must consider whether the action "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007). Such immunity does not

James C. Mahan
U.S. District Judge

attach for actions taken in bad faith. *Falline v. GNLV Corp.*, 107 Nev. 1004 (Nev. 1991). It also does not apply to acts done in violation of the Constitution. *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2011).

Defendants maintain that the decision to use force was discretionary, and that because Watford (and Lippisch, to the extent he used forced) acted according to the Henderson Police Department's use of force policy, their conduct is capable of policy analysis, thereby satisfying both prongs of the test elucidated by the Nevada Supreme Court in *Maruszczak* and warranting discretionary immunity. Plaintiff counters that an officer's decision as to the amount of force required is "not an 'integral part of governmental policymaking or planning,'" (ECF No. 71 (quoting *Maruszczak*, 168 P.3d at 729)), and that defendants acted in bad faith, *id.* at 12.

The court agrees with plaintiff that, while defendants' decision to use force involved "an element of individual judgment or choice," that decision was not "based on considerations of social, economic, or political policy." *Maruszczak*, 168 P.3d at 729. While defendants assert that they acted according to their department's use of force policy, this is not the kind of political policy contemplated by *Maruszczak*, as the decision to use force was not "an integral part of governmental policy-making or planning," nor might "the imposition of liability . . . jeopardize the quality of the governmental process . . . ." *Id.*

This court therefore denies summary judgment in favor of defendants Lippisch and Watford on plaintiff's battery and negligence claims.

**B. Defendant City of Henderson's Motion for Summary Judgment**

*1. Monell Claims*

The City of Henderson (the "city") moves for summary judgment on plaintiff's municipal liability claims. When a municipal policy of some nature is the "driving force" behind an unconstitutional action taken by municipal employees, the municipality will be liable. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). Liability exists where the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is visited pursuant to governmental "custom." *Id.* Plaintiffs can recover under three different theories: "commission," a local government implementing its official policies or established customs, such as inadequate training of governmental officials; "omission," the government's omission of an official policy, such as a failure to train; or "ratification," a policymaker's purposeful approval

James C. Mahan
U.S. District Judge

- 10 -

of an employee's unconstitutional conduct. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

The city asserts that, because no new evidence has been presented to support the claim, summary judgment is warranted. The city also asserts that the undisputed evidence warrants summary judgment in its favor, since its use of force policy prohibits excessive force and reiterates the constitutional standard explicated in *Graham*, and there is no evidence of a longstanding policy or custom of allowing excessive force. (*Id.*). Regarding plaintiff's failure to train claim, the city asserts it did not fail to train Defendants Watford and Lippisch and there was no obvious need for more or different training. (*Id.*). Finally, as to plaintiff's ratification claim, the city asserts Watford's superiors reviewed video of the arrest and approved the use of force as reasonable and aligned with the use of force policy, but that there are no facts to indicate they were aware of a constitutional violation. (*Id.*). In its reply, the city further argues that plaintiff has failed to identify an individual with final policy-making authority responsible for ratifying the alleged unconstitutional conduct. (ECF No. 7). Finally, defendant asserts NRS 41.032 prohibits liability as to plaintiff's state law claims, essentially arguing that because it affords Watford and Lippisch statutory immunity, the city should be immune as well. (ECF No. 69).

Plaintiff responds that the city's "informal practices" and "culture" demonstrate official policies are not followed. (ECF No. 72). Plaintiff asserts the use of force report, incident report, and declaration of arrest are contradictory, yet the department failed to investigate these "false reports" or discipline the officers for filing them. (ECF No. 73). Further, plaintiff states that Watford and Lippisch should have been disciplined for failure to comply with the use of force policy, because the incident report indicated the detectives thought plaintiff was unarmed, and as such, Lieutenant Garret Pionier's conclusion that the department's Use of Force policy was not violated necessarily would have disregarded the incident report. (*Id.*). Plaintiff asserts that Pioneer "approved and ratified the false statement by Defendant Watford that the force was necessary because Andrews was fleeing" which is belied by the video evidence. (*Id.*). Plaintiff also suggests that the "actions and inactions" of Lapeer, and the city's response to them, provide further support for "a policy of inaction and ratification" by the police department. (*Id.*).

The court finds that plaintiff has failed to put forth evidence to support his Monell claims as to "commission" in the form of an unconstitutional custom, policy, or practice, and

"omission" in the form of failure to train.  The city has put forth evidence of a constitutional policy or custom in the form of its use of force policy, which defines reasonable force in accordance with the *Graham* factors.  However, this court has found that there is a genuine dispute of material fact as to whether the force employed by Lippisch and Watford was excessive.  The mere fact that their superiors deemed the use of force reasonable and in accordance with the policy is not enough to establish a custom, policy, or practice of failing to adhere to the Use of Force manual.  Further, the city has provided evidence that both Lippisch and Watford were trained in use of force and arrest tactics in the year prior to plaintiff's arrest. (ECF No. 70).

Plaintiff has therefore provided no evidence of "deliberate indifference" to training or supervision of officers. Deliberate indifference is shown when the need for "training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the municipality can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

As for ratification, however, taking the facts in the light most favorable to plaintiff, the court finds that there is a genuine dispute of material fact as to whether Watford and Lippisch's superiors ratified their unconstitutional use of force.  "A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (citing *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999)). "For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the [government body]." *Id.* at 983. To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it. *Id.* at 987.  The policymaker must have knowledge of the constitutional violation and actually approve of it.  *Id.*  "[M]ere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Id.*

As an initial matter, the city attacks plaintiff's failure to put forth evidence indicating that Watford and Lippisch's superiors are final policymakers only in its reply, which does not give plaintiff an adequate opportunity to respond.  The court will not therefore consider the argument in the instant motion.

Plaintiffs have put forth evidence to raise a genuine dispute of material fact as to whether Watford and Lippisch's superiors approved the decision to use force and the basis for it, which

James C. Mahan
U.S. District Judge

- 12 -

the court has already concluded was excessive based on plaintiff's version of events. This is not merely a situation in which Watford and Lippisch's superiors failed to discipline them for a single incident of excessive force. Rather, the evidence suggests that there were varying versions of events presented by the detectives, and taking the facts in the light most favorable to plaintiff, these contradictions in addition to the fact that the officers were not disciplined, raises a genuine dispute as to whether their decision to use excessive force was ratified.

For example, Watford's use of force report is internally contradictory. In the section titled, "Use of Force Specific Information," Watford indicates the "reason for Force" was "subject fleeing," yet in the section titled, "Incident Summary," Watford's narrative indicates he used force because Plaintiff "was known to carry firearms." (ECF No. 73). Sergeant Plunkett testified in his deposition that he did not notice the section of the report in which Watford indicated Plaintiff attempted to evade arrest but relied solely on the narrative information to ascertain the legitimacy of the force employed. (ECF No. 76). However, the city indicates that both Lieutenant Poinier and Chief of Staff David Burns also reviewed the use of force report and video of the arrest to conclude that the force complied with the use of force policy. (ECF Nos. 69, 70). Yet it is unclear which justification for the use of force they relied upon. Indeed, the report detailing Plunkett, Poinier, and Burns' review indicates that the reason for the use of force was "subject fleeing." (ECF No. 70). As discussed, the video evidence as well as deposition testimony make plain that plaintiff was not fleeing. If Watford's superiors accepted this justification having viewed clear evidence to the contrary, they had knowledge of the evident constitutional violation and actually approved of it.

Furthermore, as previously noted, Condratovich's report contradicted Watford's use of force report and indicated that the officers chose to arrest plaintiff after he exited the courthouse because they knew he would be unarmed. And Lapeer's deposition testimony directly contradicted Condratovich's report indicating Lapeer notified the other detectives when plaintiff and his alleged accomplice were leaving the courthouse. (*Compare* ECF No. 73-3 *with* ECF No. 73-5). The court finds there is a genuine dispute of material fact as to whether Watford and Lippisch's superiors ratified the decision to use excessive force, as described by plaintiff.

The court therefore grants the motion in favor of the city as to plaintiff's third and fourth claims for municipal liability but denies the motion as to plaintiff's fifth claim for municipal liability.

James C. Mahan
U.S. District Judge

- 13 -

*a. Statutory Immunity*

The city asserts the same argument as Watford and Lippisch as to statutory immunity, arguing it is subject to the immunity provided by NRS 41.032 because the decision to use a certain level of force is discretionary and subject to policy analysis. (ECF No. 69). Though plaintiff does not address the argument and appears to have waived opposition, the argument nonetheless fails for the same reasons discussed before as to Watford and Lippisch. The court therefore denies the motion for summary judgment as to plaintiff's state law claims against the city (claims six and seven).

This motion is granted as to plaintiff's third and fourth municipal liability claims and denied as to plaintiff's remaining claims, as discussed in this order.

## IV.   CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Karl Lippisch and Phillip Watford's motion for summary judgment (ECF No. 68) is DENIED.

IT IS FURTHER ORDERED that defendant City of Henderson's motion for summary judgment (ECF No. 69) is GRANTED in part and DENIED in part.

DATED September 25, 2020.

                                              UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 14 -